# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (207) 279 - 9286 | No. 2:24-mj-347-KFW |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathan Duquette, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (207) 279-9286 (the "Target Cell Phone"), whose service provider is Verizon Wireless ("Verizon"), a wireless telephone service with offices at 180 Washington Valley Road, Bedminster, New Jersey. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

3.  I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI). I have been in this position since June 2015, and I have been a Task Force Officer

in FBI's Boston Division since January 2018. I am also a Border Patrol Agent with the U.S. Border Patrol and have been in this position since December 2009. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants involving cellular data.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. § 841(a)(1) (Distribution or Possession with Intent to Distribute Controlled Substances), and 846 (Attempt and Conspiracy), have been committed, are being committed, and will be committed by Target Subject FNU LNU, known by "brobro" and/or "GREGO 2," and their associates. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. I hereby adopt and incorporate by reference the affidavit filed in support of a search warrant in the United States District Court, District of Maine Case No. 2:24-

mj-338-KFW, attached hereto as Exhibit A. That affidavit documented the seizure of four cell phones and one Subscriber Identity Module (SIM) from a vehicle that was occupied by Target Subjects LAUREN SABATTUS, WILKIE REYES REYNOSO, and GERTRUDYS RAMIREZ PUJOLS.

8. I also hereby adopt and incorporate by reference the affidavit filed in support of a criminal complaint in the United States District Court, District of Maine Case No. 2:24-343-KFW, attached hereto as Exhibit B. That affidavit alleged SABATTUS, REYES, and RAMIREZ were involved in the distribution and possession with intent to distribute controlled substances, including a mixture or substance containing methamphetamine, its salts, isomers, and salts of its isomers, and a mixture or substance containing N-phenyl-N- [1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), in violation of Title 21, United States Code, Section 841(a)(1).

9. I have reviewed electronic messages recovered from REYES' cell phone, which was identified as Target Device 2 in Exhibit A. I identified this device as belonging to REYES, based on, upon other indicia, the device owner's name ("G") and multiple selfie-style photographs which I recognize depict REYES based on my personal interaction with him. Among other messages resident on the phone, I have reviewed the following conversation which took place on about October 24, 2024, and October 25, 2024, between REYES and contact "brobro" with the assigned call number of the Target Cell Phone.

| TIME STAMP[1] | REYES | BROBRO |
|---|---|---|
| 10/24/24, 11:51:00 am | | What's up with Mike. He's not going to the metadone clinic?[2] |
| 11:51:14 | | I don't have have more down to give him |
| 10:31:34 pm | Klok | |
| 10/25/24, 12:35:54 am | let me get the speaker before you leave | |
| 1:09:07 am | Yo did you grab those sticks | |

10.     I believe that the conversation reflected above concerns fentanyl. I know based on my training and experience that drug traffickers often refer to heroin or fentanyl as "down" because of the sedated and euphoric effects they cause. A common way to distribute fentanyl is in "sticks" which are created by pressing powder into cylindrical shaped objects that weigh ten grams each.

11.     I have reviewed photographs, videos, and electronic messages recovered from RAMIREZ's cell phone, which was identified as Target Device 3 from Exhibit A. I identified this device as belonging to RAMIREZ, based upon, among other indicia, the email address associated with the phone (gramirezpujols@gmail.com), and multiple selfie-style photographs which I recognize depict RAMIREZ, based on my personal interaction with him. Among other messages resident on the phone, I have reviewed the

---

[1]     Note that the times reflected here are listed in Coordinated Universal Time ("UTC"), consistent with the records associated with the device. At all times relevant to the messages described herein, UTC was four hours ahead of Eastern Daylight Time ("EDT"). For example, a message sent at 4:23 a.m. UTC was sent at 12:23 a.m. EDT.

[2]     All spelling, grammar, and similar errors are reflected in the original messages.

following conversation which took place between about October 22, 2024, and November 1, 2024, between RAMIREZ and contact "Grego 2" with the assigned call number of the Target Cell Phone.

| TIME STAMP | RAMIREZ | GREGO 2 |
|---|---|---|
| 10/22/2024, 3:33:42 pm | *Video sent – see Screen Shot 1 | |
| 7:22:03 | Weeeeee | |
| 11/1/2024, 6:14:36 pm | | 23 river rd Lewiston Maine |
| 9:02:38 | Gertrudys micael ramirez pujols | |
| 9:03:17 | You sent a live location.* | |
| 9:13:50 pm | *Image sent – see Screen Shot 2 | |




Screen Shot 1                    Screen Shot 2

12. Based on my training and experience I believe the substances depicted in Screen Shot 1 are kilograms of fentanyl. The substances are marked so the producer can identify their product. Brick quantities of fentanyl are typically uncut or "pure" and sold to large scale distributors who then dilute the product for further distribution to midlevel dealers and end users.

13. In the above conversation that occurred on about November 1, 2024, several hours in advance of the traffic stop, Grego 2 texted RAMIREZ with an address in Lewiston. At approximately 5:13 p.m. EDT—during the pendency of the traffic stop—RAMIREZ sent Grego 2 Screen Shot 2, which appeared to be a screen shot of his Waze navigation application, which depicted RAMIREZ's location on I-95 overlapping with the Waze icon denoting the presence of police. As shown in the screen shot, RAMIREZ was located approximately 7 minutes away from what appears to be the Lewiston address previously provided by Grego 2.

14. A law enforcement database was queried for 23 River Road, Lewiston, Maine and a first name of "Greg." One record was returned belonging to Gregorio Diaz. Among other things, it is hoped that the requested warrant will assist law enforcement in substantiating the identity of Target Subject FNU LNU.

## ADDITIONAL INFORMATION REGARDING WIRELESS CARRIERS

15. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitudelongitude data and cell-site data, also known as "tower/face information" or cell

tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that Verizon can collect cellsite data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. This information can be extremely useful when attempting to locate a suspect or identify his or her past historical location. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. By analyzing the incoming and outgoing phone numbers along with the duration, date, and time of who the subject (Target Cell Phone) is communicating with through the cellular service provider's records can assist law

7

enforcement in identifying the other party to the call. By running those telephone numbers through normal investigative steps and searches through open-source public databases, this can lead to the identification of specific locations such as a hotel, residence, or other type of physical address. When used in conjunction with cell-site and other precision location information can lead to identifying and confirming specific addresses or areas of interest where the subject is or has been. This information is also necessary and part of the service provider's call detail records (ordinary business records) associated with historical cell-site information and is necessary to gain a more complete understanding and more accurate view of a subject's historical and perspective location.

17. Based on my training and experience, I know that cellular providers such as VERIZON can also collect Timing Advance data, which is also referred to as Per Call Measurement Data ("PCMD"), the "real-time tool" ("RTT"), and True Call data. Timing Advance data estimates the approximate distance of the cellular device from a cellular tower based upon the time it takes for signals to travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

18. Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), an

International Mobile Equipment Identity ("IMEI"), a Subscription Permanent Identifier ("SUPI"), and/or a Network Access Identifier ("NAI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. Also, once the subject has been taken into custody, this identifying account information (to include email addresses and subscriber information) may also be necessary for evidentiary purposes to identify the cellular records with the subject's phone itself on a particular date and time. Furthermore, other identifying information such as subscriber information, email addresses associated with the user of the account, all assist law enforcement identify and confirming the end user (subject) to the account maintained by the service provider. This information may also help identify if the subject discontinues service, changes devices (such as IMEI, ESN, MEID, or SUPI), or if someone else begins using this telephone number after the subject terminates the account or provides the phone to another user.

19.    Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and

9

experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users.

## AUTHORIZATION REQUEST
### TECHNICAL TERMS

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the

government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

_____
Jonathan Duquette
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Nov 13 2024

City and state: Portland, Maine

_____
Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title